FILED
2012 Jan-23  PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LANCE B. KOURY, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]    2:10-CV-3643-KOB |
| | ] |
| JOHN M. MCHUGH, Secretary of the Army, | ] |
| | ] |
| | ] |
| Defendant. | ] |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant's Motion to Dismiss or for Summary Judgment Based on Subject Matter Jurisdiction (doc. 5).  The parties have fully briefed the motion.  The court has considered the submissions and the applicable law.  Defendant, Secretary of the Army, argues that this employment discrimination case should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  Specifically, the Secretary asserts Plaintiff Lance B. Koury's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, are barred by the doctrine of intra-military immunity.  For the reasons stated below, the court agrees and finds that the Defendant's motion to dismiss is due to be GRANTED.

**I.  FACTUAL BACKGROUND**

Plaintiff Lance B. Koury, an Arab/Lebanese-American, worked as a "Dual Status Military Technician" for the Alabama Army National Guard beginning in 2000.  From 2000 to 2007, Plaintiff Koury was classified as a "Supervisory Aircraft Flight Instructor" with a military rank of Lieutenant Colonel.  During this time, he worked at Army Aviation Flight Facility #2 in

Birmingham, Alabama and his civilian pay grade was GS-13.  As a matter of federal law, and as a condition of his employment, Lt. Col. Koury was required to serve as a member of the National Guard; to hold the appropriate military grade for his position; and to wear the uniform appropriate for his grade and component of the armed forces while performing duties as a technician.  (Mot. to Dismiss, doc. 23, at 3 (citing 32 U.S.C. § 709(b)).

Around February 2007, Lt. Col. Koury applied for a dual status technician position of Facilities Commander for Army Aviation Flight Facility #2.  Colonel Anthony Bonasera was the selecting official for the Facilities Commander position.  Col. Bonasera notified Lt. Col. Koury that he had been non-selected for the position, and that Lieutenant Colonel Daniel Norman had been selected instead. In September, 2007 Col. Bonasera reassigned Lt. Col. Norman to Army Aviation Support Facility #1.

After Lt. Col. Norman's reassignment, Lt. Col. Koury again applied and was non-selected for the Facilities Commander position at Army Aviation Support Facility #2. In October 2007, Lt. Col. Koury received a "Notice of Management Directed Reassignment," explaining that he was being reassigned from his position as Supervisory Aircraft Flight Instructor to the position of Aircraft Flight Instructor/Safety Officer. Lt. Col. Koury was informed that the reason for his reassignment was to fill a critical need for which management felt he was the best qualified and for which he had expertise to fill the position. Lt. Col. Koury maintained the same salary, duty station, and supervisory chain after the reassignment.

## II.  PLAINTIFF'S CLAIMS

In this lawsuit, Lt. Col. Koury alleges two counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In the first count, "Race and National Origin Discrimination,"

Lt. Col. Koury alleges that he was discriminated against because of his race and national origin

and that he was subjected to a hostile work environment. The second count is for retaliation. Lt.

Col. Koury brings both counts against his employer, the Secretary of the Army, and alleges that

they arose in the course of his employment with the Alabama Army National Guard.

In his motion to dismiss, the Secretary does not raise failure to state a claim, claim or

issue preclusion, or any argument concerning failure to exhaust administrative remedies.  Instead,

the Secretary raises the doctrine of intra-military immunity as a bar to all claims, arguing that this

case stands to be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. The only

disputed issue before the court relevant to the motion to dismiss is the applicability of the intra-

military immunity doctrine, otherwise known as the *Feres* doctrine.  *See Feres v. United States*,

340 U.S.135, 146 (1950).

### III.  STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss challenges the district court's subject matter

jurisdiction and can take one of two forms—a facial or a factual attack.  *Stalley v. Orlando Ref"l*

*Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint

requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject

matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the

motion."  *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251

(11th Cir. 2007).  "By contrast, a factual attack on a complaint challenges the existence of subject

matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."

*Id.*  Under a factual attack, such as here, the court "is not limited to an inquiry into undisputed

facts; it may hear conflicting evidence and decide for itself the factual issues that determine

3

jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).

## IV.  DISCUSSION

### A.      *The* Feres *Doctrine*

The Secretary argues that Plaintiff's claims stand to be dismissed as a matter of law

according to the doctrine of intra-military immunity, also known as the *Feres* doctrine.

Generally, this longstanding doctrine provides that courts may not entertain actions by service

members against the military for wrongs arising out of, or in the course of, their military service.

*See Feres v. United States*, 340 U.S. 135, 146 (1950) ("[T]he Government is not liable under the

Federal Torts Claims Act for injuries to servicemen where the injuries arise out of or are in the

course of activity incident to service.").  Although the *Feres* doctrine first developed in the

context of claims arising under the Federal Tort Claims Act, the Supreme Court, through a series

of later cases, expanded the doctrine to include *all* suits for damages.  *See Chappell v. Wallace*,

462 U.S. 296, 305 (1983) (applying doctrine to suits seeking damages for alleged constitutional

violations); *United States v. Shearer*, 473 U.S. 52, 59 (1985) (non-constitutional violations);

*United States v. Stanley*, 483 U.S. 669, 684 (1987) (*Bivens* claims).  The Eleventh Circuit Court

of Appeals has recognized that the "impetus" behind this expansion

> was an acknowledgment of the "special nature of military life [and] the need for
> unhesitating and decisive action by military officers and equally disciplined
> responses by enlisted personnel [that] would be undermined by a judicially
> created remedy exposing officers to personal liability at the hands of those they
> are charged to command."

*Spiegner v. Alexander*, 248 F.3d 1292, 1295 (11th Cir. 2001) (quoting *Chappell*, 462 U.S. at 304).

The Eleventh Circuit applies a three-factor test to determine whether a plaintiff's alleged

injuries "arise out of or are in the course of activity incident to military service," as set forth in

*Feres* and its progeny: (1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity the serviceman was engaged in at the time of the injury. *Speigner*, 248 F.3d at 1298; *see also Whitley v. United States*, 170 F.3d 1061, 1070 (11th Cir. 1999); *Kitowski v. United States*, 931 F.2d 1526, 1528-29 (11th Cir. 1991).  "After evaluating the relative weight of these factors, a court should determine whether an activity is incident to service based on the totality of the circumstances." *Pierce v. United States*, 813 F.2d 349, 353 (11th Cir. 1987).  The rationale of this test is to separate cases that may interfere with military discipline and command decisions from those that do not.  *See Whitley*, 170 F.3d at 1069.

**B.      *Treatment of Dual Status Technicians in Other Circuits***

Although other circuits have discussed the application of the *Feres* doctrine to dual-status technicians, the Eleventh Circuit Court of Appeals has not specifically addressed the treatment of dual-status National Guard military technicians under its three-part "incident to service" test. Multiple district courts in the Eleventh Circuit have done so, however, including this court in a case involving strikingly similar facts. *See Woody v. Geren*, No. 4:08-CV-2233-KOB, doc. 32 (N.D. Ala. Mar. 16, 2011); *see also  Paulk v. Harvey*, 2006 U.S. Dist. LEXIS 70169 (M.D. Ala. 2007) (applying three-factor test to military technician's Title VII age discrimination claims against the Secretary of the Army).

Nevertheless, Lt. Col. Koury urges the court to render the intra-military immunity doctrine inapplicable to this case because of his dual-status employment.  Not surprisingly, the defendant urges the court to take a markedly different approach. The defendant's motion asks this court to adopt the approach of the First and Sixth Circuits, which have held that dual-status military technician positions are "irreducibly military in nature," thus precluding any Title VII

claims under the *Feres* doctrine.  *See* doc. 6, at 12–13, citing *Fisher v. Peters*, 249 F.3d 433 (6th

Cir. 2001); *Lestiko v. Stone*, 124 F.3d 817, 820-21 (6th Cir. 1998); *Wright v. Park*, 5 F.3d 586,

588-89 (1st Cir. 1993)).  The defendant explains this approach is one of "two general theories"

regarding the applicability of Title VII to dual status National Guard technicians.  The second

approach, advanced by the Fifth and Ninth Circuits, holds that a National Guard technician may

proceed under Title VII *only if* the conduct "arises purely from the civilian aspects" of the

employment, and "the cause of action is not integrally related to the military's unique structure."

*See* doc. 6, at 12–13, citing *Brown v. United States*, 227 F.2d 295, 299 (5th Cir. 2000); *Mier v.*

*Owens*, 57 F.3d 747 (9th Cir. 1995)).

The court finds it need not choose between these two approaches, nor affirmatively adopt

any of these court's holdings.  Until the Eleventh Circuit has occasion to analyze the *Feres*

doctrine in the context of dual-status military employment, this court is limited to analysis under

the existing three-factor test, which the Eleventh Circuit has clearly established as the means by

which to determine intra-military immunity.

**C.      *Application of the* Feres *doctrine to Lt. Col. Koury***

*1.      Lt. Col. Koury's Failure to Promote Claim*

In *Woody v. Geren*, this court applied the Eleventh Circuit's three-factor test to claims of

race-based promotion denial and racial harassment under facts strikingly similar to those in this

case.  *See Woody v. Geren*, No. 4:08-CV-2233-KOB, Doc. 32 (N.D. Ala. Mar. 16, 2011).  In

analyzing the plaintiff's non-promotion claim in that case, this court considered the plaintiff's

active employment with the Alabama National guard and his military rank. The court also

considered that the supervisory position he applied for required a minimum military rank higher

than that the plaintiff held at the time, and that the plaintiff's selection for the position would

result in prohibited grade inversion. *See Woody*, No. 4:08-CV-2233-KOB, Doc. 32 at 9. In

analyzing the plaintiff's non-retention claims, the court found significant the plaintiff's active

military status and the retention board's required review of his military personnel records to

determine his potential for military re-enlistment.

Likewise, the court concludes here that Lt. Col. Koury's claims relating to the denial of

his promotion to Facilities Commander, as well as his reassignment to Aircraft Flight

Instructor/Safety Officer, are nonjusticiable under the Eleventh Circuit's three-factor test; more

fundamentally, the court concludes that his injuries arise out of or are in the course of activity

incident to military service. At the time of both of these adverse employment actions, Lt. Col.

Koury was actively employed with the Alabama National Guard and held a military rank of

Lieutenant Colonel. The position he applied for, Facilities Commander, would have charged him

with managing "maintenance, safety, aviation, life support, equipment, flight operations . . . ."

and with managing the "individual readiness of all crew members who fly out of those facilities .

. . ." Def. Ex. C at 16. Col. Bonasera's decision to select a different person for the position was

based on his assessment that Lt. Col. Koury's leadership skills were not yet up to par for such a

demanding position.  Because the facility in which Lt. Col. Koury sought this promotion was a

military facility housing military aircraft, this court concludes that one of Lt. Col. Koury's

alleged injuries—the denial of his promotion to a higher supervisory position in that facility—is

clearly incident to his service in the Alabama National Guard.

At least one other court has reached the same conclusion under the Eleventh Circuit's

three-factor test in similar circumstances.  For example, a court in the Middle District of

Alabama addressed a similar situation involving the non-promotion of a dual status military

technician with the Alabama Army National Guard in the *Paulk* case. Judge Watkins, applying

the Eleventh Circuit's three-factor test, concluded that the defendant's decision not to promote

the plaintiff "was clearly 'incident to service' in the Alabama Army National Guard, and

consequently, barred from review by the *Feres* doctrine."  *Paulk*, 2006 U.S. Dist. LEXIS 70169,

at *10.

The rationale behind the Eleventh Circuit's three-factor test in *Speigner* further supports

finding that Lt. Col. Koury's claims are nonjusticiable. In affirming the district court's ruling that

claims arising from an Alabama National Guard's officer non-retention were nonjusticiable

under the three-factor "incident to service" test,  the Court stated:

> Because there are a limited number of positions available at the higher levels of
> command, it is imperative to the military that only those officers determined to
> be competent to serve are retained. To dictate to the military which officers
> should be considered competent would be to interfere in just the way that *Feres*
> and its progeny preclude.

*Speigner*, 248 F.3d at 1298.  Further, the Court cited with approval a statement by the Ninth

Circuit that, "Military promotion is one of the most obvious examples of a personnel decision

that is integrally related to the military's structure." *Id.* (quoting *Mier v. Owens*, 57 F.3d 747,

751 (9th Cir.1995)).  The Court also recognized that "'civilian courts have traditionally deferred

to the superior experience of the military in matters of duty orders, promotions, demotions, and

retentions.'" *Id.* (quoting *Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 771 (7th Cir.

1993)). This rationale bolsters the need for deference to Col. Bonasera's decision on the military

matter of who should lead as Facilities Commander. Accordingly, the court finds that Lt. Col.

Koury's claim on non-promotion is due to be dismissed.

*2.      Lt. Col. Koury's Retaliation Claim*

Lt. Col. Koury's retaliation claim, based on his reassignment from Supervisory Aircraft

Flight Instructor to Aircraft Flight Instructor/Safety Officer, is similarly barred by the *Feres*

doctrine. Given that this court recently held that the non-retention of a dual-status technician

cannot be challenged under the *Feres* doctrine, *see Woody v. Geren*, No. 4:08-CV-2233-KOB,

Doc. 32 at 8–10 (N.D. Ala. Mar. 16, 2011), the *Feres* doctrine should apply *a fortiori* to Lt. Col.

Koury, who maintained the same salary, duty station, and supervisory chain after reassignment.

To question the propriety of the reassignment would be precisely the type of judicial intrusion

into military decisions the *Feres* doctrine seeks to prevent. *See Paulk*, 2006 U.S. Dist. LEXIS

70169, at *9 n. 4 ("Although [the plaintiff] argues that grade inversion could have been avoided

by reassigning [another employee], it is precisely this type of involvement in military decisions

that the *Feres* doctrine seeks to prevent.").

Lt. Col. Koury seeks to preserve his non-promotion and retaliation claims in the face of

the *Feres* doctrine by arguing that his position was not "irreducibly military in nature" and that

his claims do not arise from the military aspects of his employment. He supports these arguments

by drawing parallels between civilian aircraft facilities and the military facility where he works,

stating that "[n]othing about [his] position description is unique to the military." *See* Pl.'s Opp.

Br. at 10, 12 ("How would the position description be any different at a non-military aviation

facility? It would not."). This court strongly disagrees. Although parallels between the work of

civilian and military technicians doubtlessly exist, the nature of Lt. Col. Koury's position cannot

be separated from its military context. *See Am. Fed. Of Govt. Employees v. FLRA*, 730 F.2d

1534, 1545–46 (D.C. Cir. 1984) (explaining that "while the principal purpose of the Technician Act was to provide fringe and retirement benefits to technicians, *the purpose of the technicians was to insure that the military mission of the National Guard* would be carried out effectively and efficiently" and that "*military* preparedness is the *sine non qua* of the Technician Act") (emphasis in original).

The difficulty of imagining how Lt. Col. Koury's position could have been "purely civilian" illustrates why some circuits have chosen to categorically find dual-status technician positions "irreducibly military in nature." *See Fisher v. Peters*, 249 F.3d 433, 443–44 (6th Cir. 2001); *Wright v. Park*, 5 F.3d 586, 588–89 (1st Cir. 1993). Although the court need not adopt the First and Sixth Circuits' approach, neither has Lt. Col. Koury persuaded the court that his position involved *purely* civilian aspects. Moreover, this court's holding respects the separations of powers principles that remain a core concern of intra-military immunity:

> "[J]udges are not given the task of running the Army. The responsibility for setting up channels through which . . . grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

*Chappell v. Wallace*, 462 U.S. 296, 301 (1983) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)).

3.      *Lt. Col. Koury's Hostile Work Environment Claim*

Finally, the court will address Lt. Col. Koury's hostile work environment claim, embedded in count one for "Title VII - Race and National Origin Discrimination." In his complaint, Lt. Col. Koury alleges that he was subjected to a hostile work environment because he was "forced to

endure the humiliation and embarrassment of Defendant's prejudicial remarks regarding his race and national origin." Pl.'s Compl. ¶ 31. Despite these allegations, Lt. Col. Koury appears to have completely abandoned this claim, making no reference to the hostile work environment claim in his opposition brief even though the defendant specifically argued that the claim was barred by the *Feres* doctrine. *See* Def.'s Mot. Dismiss at 13, 15, 17. The court agrees with the defendant that Lt. Col. Koury's failure to respond to any of these arguments constitutes abandonment of that claim. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."). Moreover, even had Lt. Col. Koury pressed his hostile work environment claim in his opposition brief, the court would have found it barred under the *Feres* doctrines for the reasons mentioned above and in its prior memorandum opinion in *Woody v. Geren,* which dealt with a virtually identical issue. *See Woody v. Geren*, No. 4:08-CV-2233-KOB Doc. 32 at 10–13 (citing another case, which noted that "the maintenance shop [where the plaintiff worked] was a military facility, and while performing technician duties, plaintiff, his peers, and supervisors were in military uniform" and which held that "the challenged activity is ***clearly incident*** to plaintiff's military service . . .") (emphasis in original) (quoting *Woody v. West*, No. 2:97-CV-1291-SLB, Doc. 33 at 27 (N.D. Ala. Sept. 29, 2000)).

## V.  CONCLUSION

For the reasons stated above, the court finds that this case is due to be dismissed with prejudice because the doctrine of intra-military immunity bars Lt. Col. Koury's employment discrimination claims against the Army under Title VII.

The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 23rd day of January, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE